IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Malikie Innovations Ltd. and<br>Key Patent Innovations Ltd.,<br><br>Plaintiffs,<br><br>v.<br><br>SAP America, Inc. and SAP, SE.<br><br>Defendants. | CIVIL ACTION NO.:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND**

Plaintiffs Malikie Innovations Ltd. ("Malikie") and Key Patent Innovations Ltd. ("KPI") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this Complaint for patent infringement and damages against Defendants SAP America, Inc. and SAP, SE (collectively "SAP" or "Defendants") and, in support, allege the following:

**PARTIES**

1. Plaintiff Malikie is the successor-in-interest to a substantial patent portfolio created and procured over many years by BlackBerry Ltd., formerly known as Research in Motion Ltd., and its predecessor, subsidiary, and affiliated companies (collectively, "BlackBerry"). Malikie is an Irish entity duly organized and existing under the laws of Ireland. Malikie has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

2. Plaintiff KPI is the beneficiary of a trust pursuant to which Malikie owns, holds, and asserts the Asserted Patents(set forth below). KPI is an Irish entity duly organized and existing under the laws of Ireland. KPI has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

3. On information and belief, Defendant SAP America, Inc. ("SAP America") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 3999 West Chester Pike, Newton Square, Pennsylvania 19073. SAP has a regular and established place of business at 7500 Windrose Avenue, Suite 250, Plano, Texas 75024. On information and belief, SAP America may be served with process through its registered agent at CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas, 75201.

4. On information and belief, Defendant SAP, SE is a corporation duly organized and existing under the laws of Germany with a place of business at Dietmar-Hopp-Allee 16, Walldorf, Baden-Wurttemberg, 69190. On information and belief, SAP America is a subsidiary of SAP, SE.

5. On information and belief, Defendant SAP, SE and/or its employees or officers direct and/or control the actions of its direct and indirect subsidiaries. On information and belief, SAP, SE and/or its employees or officers direct and/or control the actions of these entities by, for example, inducing and contributing to the actions complained of herein.

## PATENTS IN SUIT

6. Malikie is the assignee of and owns all right and title to U.S. Patent Nos. 9,552,498 ("the '498 Patent"); 7,685,396 ("the '396 Patent"); 10,503,742 ("the '742 Patent"); and 7,496,606 ("the '606 Patent") (collectively, "the Asserted Patents").

7. BlackBerry was a pioneering technology company best known for transforming mobile communications in the late 1990s and 2000s. The company was among the first to deliver push email, allowing real-time synchronization between corporate mail servers and handheld devices, which became a hallmark of enterprise mobility. A key innovation behind BlackBerry devices was its BlackBerry Enterprise Server (BES), which securely connected mobile devices with corporate IT systems. BES provided end-to-end encryption, centralized management, and

data compression, making it one of the most secure and bandwidth-efficient enterprise mobility solutions of its era. This backend architecture distinguished BlackBerry from competitors and cemented its reputation for unmatched security in mobile communications. Beyond smartphones, BlackBerry invested heavily in wireless networking, secure communications protocols, and mobile application platforms. Many of its inventions anticipated modern standards in mobile data handling, encrypted communications, and device management. Although BlackBerry eventually exited the hardware market, its early innovations in both devices and backend systems had a lasting influence on mobile security and enterprise mobility solutions.

8. Blackberry developed numerous innovative and diverse technologies, including groundbreaking inventions at the intersection of secure mobile devices and enterprise infrastructure. These innovations capture advances in user interface and messaging efficiency on handheld devices, seamless coordination between mobile hardware and backend servers, robust methods for secure data transmission and management, and refined frameworks for accessing and controlling enterprise applications. Collectively, they demonstrate BlackBerry's leadership in creating a tightly integrated ecosystem of mobile devices and server technologies that delivered secure, reliable, and highly functional communications for business and government users. Some of these groundbreaking inventions are described and claimed in certain of the Asserted Patents.

9. The '498 Patent, entitled "On-Chip Storage, Creation, and Manipulation of an Encryption Key," was duly and lawfully issued on January 24, 2017. A true and correct copy of the '498 Patent is attached hereto as Exhibit 1.

10. The '396 Patent, entitled "System and Method for Dynamic Memor Allocation," was duly and lawfully issued on March 23, 2010. A true and correct copy of the '396 Patent is attached hereto as Exhibit 2.

11. The '742 Patent, entitled "Electronic Device and Method of Searching Data Records," was duly and lawfully issued on December 10, 2019. A true and correct copy of the '742 Patent is attached hereto as Exhibit 3.

12. The '606 Patent, entitled "System and Method for Synchronizing Data Records Between Multiple Databases," was duly and lawfully issued on February 24, 2009. A true and correct copy of the '606 Patent is attached hereto as Exhibit 4.

## JURISDICTION AND VENUE

13. Plaintiffs re-allege and incorporate herein by reference the preceding paragraphs of their Complaint.

14. This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Thus, this is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331, 1332, and 1338(a).

15. This District has general and specific personal jurisdiction over Defendants because, directly or through intermediaries, Defendants have committed acts within this District giving rise to this action; are present in and transact and conduct business, directly, and/or indirectly, in this District and the State of Texas; and transact and conduct business with residents of this District and the State of Texas.

16. Plaintiffs' causes of action arise, at least in part, from Defendants' contacts with and activities in and/or directed at this District and the State of Texas.

17. Defendants have infringed the Asserted Patents within this District and the State of Texas by making, using, selling, licensing, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas, products and services covered by claims in the Asserted

Patents, including without limitation products that, when made or used, practiced the claimed methods of the Asserted Patents. Defendants, directly and through intermediaries, made, used, sold, licensed, offered for sale, imported, shiped, distributed, advertised, promoted, and/or otherwise commercialized such infringing products and services in or into this District and the State of Texas. Defendants, directly and through intermediaries, continue to do so with respect to the '396 and '742 patents. These products include SAP's HANA products, including but not limited to SAP HANA and SAP S/4 HANA ("SAP HANA products" or "Accused Products").

18. Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from goods and services provided to residents of this District and the State of Texas.

19. This Court has personal jurisdiction over Defendants pursuant to TEX. CIV. PRAC. & REM. CODE § 17.041 *et seq*.

20. Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

21. Defendants are doing business, either directly or through respective agents, on an ongoing basis in this Judicial District and elsewhere in the United States, and have committed acts of infringement in this district. SAP America has a regular and established place of business in this Judicial District including: 7500 Windrose Avenue, Suite 250, Plano, Texas 75024. On information and belief, each Defendant makes, uses, sells, offers to sell, and/or imports infringing products into and/or within this District, maintains a permanent and/or continuing presence within this District, and has the requisite minimum contacts with this District such that this venue is a fair and reasonable one. Upon information and belief, each Defendant has transacted and, at the time of the filing of the Complaint, is continuing to transact business within this District.

22. Venue is further proper in this District over SAP, SE because it is a foreign corporation.

## FIRST CLAIM

### (Infringement of U.S. Patent No. 9,552,498)

23. Plaintiffs re-allege and incorporate herein by reference the preceding paragraphs of their Complaint.

24. The '498 Patent is generally directed to hardware-based, on-chip secure encryption key storage and methods for encrypting data stored in a memory using a hardware-based, on-chip secure encryption key.

25. The claimed arrangements of the '498 patent are directed to improvements in computer technology, and in particular to encryption and data security systems. Prior art systems relied on software-based encryption, where keys were accessible to attackers with sufficient technical skill, and encryption operations created inefficiencies in system performance. The claimed invention instead provides a hardware-based encryption engine with on-chip secure key storage that isolates encryption keys from software access and generates unique keys by combining a base key with memory addresses to provide stronger security. These features improve the functioning of computers themselves by enabling data processing devices to securely store and process sensitive information with stronger security, greater efficiency, and improved reliability than was possible with prior art software-based solutions.

26. Defendants have, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '498 Patent, by having made, used, tested, sold, leased, offered for sale, and/or imported the SAP

HANA products with Data Volume Encryption. An exemplary claim chart concerning one way in which SAP infringed claim 1 of the '498 Patent is attached as Exhibit 5.

27. By reason of Defendants' infringing activities, Plaintiffs have suffered substantial damages in an amount to be determined at trial.

## SECOND CLAIM

### (Infringement of U.S. Patent No. 7,685,396)

28. Plaintiffs incorporate by reference paragraphs 1-22 herein.

29. The '396 Patent is generally directed to systems and methods for dynamic memory allocation using pages of fixed-size memory blocks, where the blocks themselves are free of header information to maximize memory usage.

30. The '396 Patent claims are directed to specific improvements in computer memory management technology. The invention provides a header-less dynamic memory allocation architecture that subdivides memory pages into fixed-size blocks and where the blocks themselves are free of header information. The dynamic memory allocation architecture utilizes a freelist and page and block pointers to eliminate per-block header overhead, reduce internal fragmentation, and enable efficient reuse of memory blocks. The specific dynamic memory allocation architecture improves the functioning of computers themselves by conserving memory resources, reducing processor cycles spent on allocation, and allowing applications to execute more efficiently in memory-constrained environments.

31. Defendants have been on notice of the '396 Patent and a specific factual basis for their infringement of the '396 Patent since at least the filing of this Complaint. On information and belief, Defendants have not taken any action to stop their infringement.

32. Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 11 of the '396 Patent, by making, using, testing, selling, leasing, offering for sale, and/or importing the SAP HANA products with memory management/allocation. An exemplary claim chart concerning one way in which SAP infringes claim 11 of the '396 Patent is attached as Exhibit 6.

33. Defendants also indirectly infringe the '396 Patent under 35 U.S.C. § 271(b) and (c).

34. Defendants have knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 11 of the '396 Patent (such as customers in this District and throughout the United States) under 35 U.S.C. § 271(b), and continues to do so, by, for example, advertising to customers and encouraging them to use SAP's HANA products and services because of its memory management techniques. *See* Exhibit 6.

35. Defendants have has also contributed to the direct infringement of at least claim 11 of the '396 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '396 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants have provided, owned, operated, sold, offered to sell, leased, licensed, used, and/or imported various hardware and software that offer dynamic memory allocation (such as that shown in Exhibit 6) that are not a staple article of commerce and are incapable of substantial noninfringing use.

36. By reason of Defendants' infringing activities, Plaintiffs have suffered, and will continue to suffer, substantial damages in an amount to be determined at trial.

37. Defendants' ongoing infringement is willful in view of the above, and their failure to take any action to stop their infringement or inducement of, or contribution to, infringement by others.

## THIRD CLAIM

### (Infringement of U.S. Patent No. 10,503,742)

38. Plaintiffs incorporate by reference paragraphs 1-22 herein.

39. The '742 Patent is generally directed to methods for searching data records across multiple applications by utilizing metadata mappings to respective unified format columns and converting the searched data records for displaying in a unified search result and in a unified format.

40. The '742 patent improves search functionality by enabling cross-application searching with consistent formatting and filtering, thereby solving the technical problem of inconsistent, inefficient, application-specific searches. This is a clear technological improvement over prior art systems that required individualized, inconsistent query handling. The claimed arrangements of the '742 Patent are directed to improvements in methods of searching data records across multiple applications, and provide numerous technological advantages over the prior art. Prior art systems required application-specific logic to query each individual data source (e.g., email, calendar, contacts, photos), leading to inconsistent results, inefficiencies, and inability to present unified search outputs. In contrast, the '742 Patent discloses and claims a search method that stores metadata for each application identifying the location of associated data records, mapping application-specific fields to a unified search format, and defining filterable fields and filtering methods. Using this metadata, a general application programming interface constructs application-specific queries, performs searches across the plurality of applications, converts results

into a consistent unified format, and displays them together on the device. These claimed arrangements constitute an improvement to the search functionality of devices by enabling consistent, efficient, and accurate cross-application search results.

41. Defendants have been on notice of the '742 Patent and a specific factual basis for their infringement of the '742 Patent since at least the filing of this Complaint. On information and belief, Defendants have not taken any action to stop their infringement.

42. Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '742 Patent, by making, using, testing, selling, leasing, offering for sale, and/or importing the SAP HANA products with Fiori Search/Enterprise Search. An exemplary claim chart concerning one way in which SAP infringes claim 1 of the '742 Patent is attached as Exhibit 7.

43. Defendants also indirectly infringe the '742 Patent under 35 U.S.C. § 271(b) and (c).

44. Defendants have knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '742 Patent (such as customers in this District and throughout the United States) under 35 U.S.C. § 271(b), and continues to do so, by, for example, advertising to customers and encouraging them to use SAP HANA Fiori Search/Enterprise Search because of its ability to search disparate applications and to convert the searched data records for display in a unified search result and in a unified format.. *See* Exhibit 7.

45. Defendants have has also contributed to the direct infringement of at least claim 1 of the '742 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '742 Patent, a material part of a claimed invention, where the material part

is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants have provided, owned, operated, sold, offered to sell, leased, licensed, used, and/or imported various hardware and software that enable searching disparate applications and converting the searched data records for displaying in a unified search result and in a unified format (such as that shown in Exhibit 7) that are not a staple article of commerce and are incapable of substantial noninfringing use.

46. By reason of Defendants' infringing activities, Plaintiffs have suffered, and will continue to suffer, substantial damages in an amount to be determined at trial.

47. Defendants' ongoing infringement is willful in view of the above, and their failure to take any action to stop their infringement or inducement of, or contribution to, infringement by others.

## FOURTH CLAIM

### (Infringement of U.S. Patent No. 7,496,606)

48. Plaintiffs incorporate by reference paragraphs 1-22 herein.

49. The '606 Patent is generally directed to systems and methods for efficiently synchronizing data records between multiple databases by associating each new data record with a pair of synchronization parameters.

50. The claimed arrangements of the '606 patent are directed to specific technological improvements in synchronizing data records between multiple databases, particularly in wireless communication environments. Prior art systems relied on a single "change number" and required multi-step handshakes—typically three or more message exchanges—to detect and resolve conflicts, which introduced significant inefficiencies and delays, especially over high-latency wireless networks. The claimed arrangements of the '606 Patent improve computer technology by

associating each new data record with a pair of synchronization parameters, thereby enabling synchronization and conflict resolution with a single update message rather than multiple exchanges. The improvements result in more efficient use of network resources, reduced latency in data synchronization, and scalable support for synchronizing across multiple hosts and devices.

51. Defendants have, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '606 Patent, by having made, used, tested, sold, leased, offered for sale, and/or imported the SAP HANA products with data synchronization/replication. An exemplary claim chart concerning one way in which SAP infringed claim 1 of the '606 Patent is attached as Exhibit 8.

52. By reason of Defendants' infringing activities, Plaintiffs have suffered substantial damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. That SAP has infringed each of the Asserted Patents, and unless enjoined, will continue to infringe the '396 and '742 Patents;

B. That SAP's continued infringement of the '396 and '742 Patents is willful;

C. That SAP pay Plaintiffs' damages adequate to compensate Plaintiffs for SAP's past infringement of each of the Asserted Patents, and present and future infringement of the '396 and '742 Patents, together with interest and costs under 35 U.S.C. § 284;

D. That SAP pay prejudgment and post-judgment interest on the damages assessed;

E. That SAP pay Plaintiffs enhanced damages pursuant to 35 U.S.C. § 284;

F. That SAP be enjoined from infringing the '396 and '742 Patents, or if its infringement is not enjoined, that SAP be ordered to pay ongoing royalties to Plaintiffs for any post-judgment infringement of those Patents;

G. That this is an exceptional case under 35 U.S.C. § 285; and that SAP pay Plaintiffs' attorneys' fees and costs in this action; and

H. That Plaintiffs be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

Dated: September 12, 2025

*Of Counsel:*

Andrea L. Fair
   Texas Bar No. 24078488
Claire Abernathy Henry
   Texas State Bar No. 24053063
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy.
Longview, TX 75604
Tel: (903) 757-6400
andrea@millerfairhenry.com
claire@millerfairhenry.com

Respectfully submitted,

/s/ Matthew G. Berkowitz by permission Claire Abernathy Henry
Matthew G. Berkowitz – LEAD ATTORNEY
**REICHMAN JORGENSEN**
   **LEHMAN & FELDBERG, LLP**
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com

Khue V. Hoang
Patrick Colsher
Sean M. McCarthy
Rikesh P. Patel
**REICHMAN JORGENSEN**
   **LEHMAN & FELDBERG, LLP**
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
khoang@reichmanjorgensen.com
pcolsher@reichmanjorgensen.com
smccarthy@reichmanjorgensen.com
rpatel@reichmanjorgensen.com

*Attorneys for Plaintiffs*